WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Tauscher, <br><br> Plaintiff, <br><br> vs. <br><br> Phoenix Board of Realtors, Inc., <br><br> Defendant. | No. CV-15-00125-PHX-SPL <br><br> **ORDER** |

Before the Court are the parties' Cross Motions for Summary Judgment. (Docs. 45, 48.) For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 48) is granted.

## I. Background

Plaintiff Mark Tauscher is a deaf individual whose "expressed, preferred, and most effective means of communication" is American Sign Language ("ASL"). (Doc. 1 at 3.) Plaintiff is a licensed real estate agent in the State of Arizona. (Doc. 1 at 3.) Defendant Phoenix Board of Realtors, doing business as Phoenix Association of Realtors ("PAR"), is a real estate professional organization to which Plaintiff belongs. (Doc. 1 at 3.)

On September 28, 2012, Plaintiff contacted Defendant to notify the organization that he intended to attend classes held by PAR and "to request accommodations of ASL interpreters in order to attend the classes." (Doc. 1 at 3.) Plaintiff and Defendant's Chief Executive Officer Diane Scherer discussed Plaintiff's accommodation request for an ASL

translator over a telephone call on October 15, 2012, during which time she suggested alternative accommodations such as the use of a FM loop system or real-time captioning. (Doc. 1 at 4.) During this conversation, Scherer informed Plaintiff that "PAR could not provide ASL interpreters because of the cost," while Plaintiff advised Defendant that "other forms of accommodation could not provide effective communication in a live class setting." (Doc. 1 at 4.)

In February 2013, Plaintiff registered for a finance class offered by Defendant. (Doc. 1 at 4.) The registration form that Plaintiff completed included a checkbox stating, "I have a disability that requires special accommodation," which Plaintiff marked and underneath wrote "sign language interpreter." (Doc. 1 at 4.) Plaintiff contacted Scherer on February 7, 2013 to inform her that he planned on attending the class and again requested that an ASL interpreter be provided for him. (Doc. 1 at 4.) The following day, Plaintiff received a response from an attorney at the law firm that represents Defendant explaining that "PAR was under an obligation to accommodate Plaintiff and denied Plaintiff's request for an interpreter." (Doc. 1 at 4-5.) Plaintiff did not attend the class and received a refund for his registration costs. Subsequent correspondence between Plaintiff and Defendant's lawyer confirmed that Defendant would not provide Plaintiff an ASL interpreter because it was under no obligation to do so. (Doc. 1 at 5.)

On October 14, 2014, Plaintiff again reached out to Defendant to inform it that he enrolled in one of its upcoming courses and requested that an interpreter be provided. Plaintiff received a response from Defendant's lawyer maintaining that while it was under no obligation to provide an interpreter, PAR would be "willing to discuss 'less burdensome alternatives.'" (Doc. 1 at 5.)

Plaintiff initiated the present case against Defendant for alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 and the Arizonans with Disabilities Act ("AzDA"), Ariz. Rev. Stat. § 41-1492. (Doc. 1.) The parties have filed Cross Motions for Summary Judgment. (Docs. 45, 48.)

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (1986). If the movant carries its initial burden of production, in response, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

The court views the evidence and draws reasonable inferences "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, only disputes over facts that could affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. Discussion

To state a prima facie case under the ADA, Plaintiff must show (1) that he is disabled within the meaning of the ADA; (2) that he is a qualified individual with a disability; and (3) that he was discriminated against because of his disability. *Smith v.*

*Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).[1] The parties dispute whether Defendant is a public accommodation under Title III of the ADA. (Doc. 45 at 5-8; Doc. 48 at 9-11.) Assuming for purposes of the present Cross Motions for Summary Judgment that Defendant is a public accommodation under the ADA, the crux of this case turns on whether Defendant met its obligation to facilitate effective communication for Plaintiff through the provision of auxiliary aids.

Plaintiff claims that Defendant was required by law to provide him with an ASL interpreter and that Defendant's failure to do so amounts to discrimination in violation of the ADA. This argument fails as a matter of law. It is undisputed that Plaintiff, Defendant, and Defendant's lawyers engaged in multiple discussions over the course of two years pertaining to Plaintiff's requests for an ASL interpreter so that he could attend classes offered by Defendant. (Doc. 46 ¶¶ 51-68; Doc. 49 ¶¶ 29-43.) This discussion began on October 15, 2012 during Plaintiff's phone call with Defendant's CEO Diane Scherer, at which time Plaintiff refused to discuss alternative auxiliary aids upon learning that Defendant would not be able to accommodate his request for an ASL interpreter. (Doc. 46 ¶¶ 52-53; Doc. 49 ¶¶ 30-31.) Subsequent conversations between Plaintiff, Defendant, and Defendant's lawyers confirmed Plaintiff's refusal to consider alternative auxiliary aids. (Doc. 46 ¶¶ 51-52; Doc. 49 ¶¶ 29-32.)

As the implementing regulations for Title III of the ADA states, "[a] public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids." 28 C.F.R. § 36.303(a). Accordingly, public accommodations "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c). The type of auxiliary aid or service necessary is highly contextual. 28 C.F.R. § 36.303(c)(ii). Moreover, it is important to note that "[a]

---

[1] The parties do not dispute that Plaintiff is disabled and a qualified individual under the ADA.

public accommodation *should* consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, *but the ultimate decision as to what measures to take rests with the public accommodation*, provided that the method chosen results in effective communication." *Id.* (emphasis added).

As 28 C.F.R. § 36.303 indicates, Defendant's obligation under the ADA was satisfied when it engaged in a dialogue with Plaintiff about his request for an ASL interpreter. At no point was Defendant obligated to provide Plaintiff with his auxiliary aid of choice, it was only obligated to provide one which would facilitate effective communication. The ADA does not require public accommodations to provide an individual with their requested auxiliary aid, nor does it impose a duty to give primary consideration to an individual's particular auxiliary aid requests.[2] Again, the ADA only mandates that public accommodations provide an auxiliary aid that would facilitate effective communication. Defendant met this obligation under the ADA when it engaged in a dialogue with Plaintiff about his request for an ASL interpreter so that Plaintiff could attend Defendant's classes, but was precluded from further meeting its obligations under the ADA when Plaintiff refused to discuss alternative auxiliary aids.

At trial, Plaintiff bears the burden of proof at trial to show that he was discriminated against as a result of Defendant's conduct, not his own. Because he cannot do so, Plaintiff's claims against Defendant fail as a matter of law. Furthermore, because Plaintiff's ADA claims fail as a matter of law, so too do his claims against Defendant under the AzDA. *See McCoy v. Petwin Hayden LLC*, No. CV-16-02795-PHX-JAT, 2016 WL 7440789, at *1, n.1 (D. Ariz. 2016); *Hamblen v. Diamonte Crossroads Plaza, LLC*,

---

[2] In fact, such a position has been expressly rejected. 28 C.F.R. Pt. 36, App. A, § 36.303 ("Many commentators urged the Department to amend this provision to require public accommodations to give primary consideration to the expressed choice of an individual with a disability. However, as the Department explained when it initially promulgated the 1991 title III regulation, the Department believes that Congress did not intend under title III to impose upon a public accommodation the requirement that it give primary consideration to the request of the individual with a disability.").

No. CV-08-0561-PHX-JAT, 2009 WL 825809, at *1, n. 1 (D. Ariz. 2009) ("Although the Court only discusses the ADA claim in the body of this order, the Court's discussion is equally applicable to the AzDA claim. Compliance with Title III and its implementing regulations equals compliance with the AzDA. *See* A.R.S. § 41-1492.06(B).").

## IV. Conclusion

Plaintiff's claims against Defendant fail as a matter of law. Assuming for purposes of this motion that Defendant is a public accommodation under Title III of the ADA, Defendant met its obligations under the ADA and its implementing regulations when it engaged in a dialogue with Plaintiff about his request for an ASL interpreter for Defendant's classes. Defendant was precluded from further meeting its obligations under the ADA when Plaintiff refused to discuss alternative auxiliary aids. Accordingly,

**IT IS ORDERED:**

1. That Plaintiff's Motion for Summary Judgment (Doc. 45) is **denied**;

2. That Defendant's Motion for Summary Judgment (Doc. 48) is **granted**; and

3. That the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 29th day of September, 2017.

Honorable Steven P. Logan
United States District Judge